UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

CIVIL ACTION NO. 08-CV-7-JMH

WILLIE PURDOM,                                                                                PLAINTIFF,

VS:                    **MEMORANDUM OPINION AND ORDER**

PAUL R. GETTLEMAN,                                                                            DEFENDANT.

Willie Purdom, who is confined in the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), has filed a civil complaint asserting legal malpractice claims against Paul R. Gettleman, the defendant. The plaintiff invokes jurisdiction under the diversity of citizenship statute, 28 U.S.C. § 1332. The plaintiff has paid the $350.00 filing fee [Record No.6]. This matter is before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

*Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999), permits a district court to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed if it appears the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). *Sua sponte* dismissal is appropriate where claims lack legal plausibility necessary to invoke federal subject matter

jurisdiction.  *Apple*, 183 F.3d at 480. [1]

## DEFENDANT

The plaintiff has named Attorney Paul R. Gettleman as the sole defendant to this action.  Plaintiff lists Gettlemen's address as 157 Orchard Street, Ambridge, Pennsylvania, 15003.

## CLAIMS AND RELIEF SOUGHT

The plaintiff alleges that in 2004, the defendant committed legal malpractice while representing him in a federal drug case. Plaintiff further alleges that Gettleman "defrauded" him out of the $30,000.00 in legal fees which he (plaintiff) paid to Gettleman. Plaintiff alleges that he has experienced great emotional anxiety and distress as a result of Gettleman's alleged legal malpractice and misappropriation of fees. The plaintiff seeks the recovery of the $30,000.00 which he paid to the defendant in legal fees.  He also demands $200,000.00 in compensatory damages; $300,000.00 in punitive damages; court costs and other unspecified  relief.

---

[1] Although the plaintiff is a prisoner, he is not proceeding *in forma pauperis* because he has paid the $350.00 filing fee. For that reason, his complaint is not subject to screening under 28 U.S.C. § 1915(e)(2), which applies to *in forma pauperis* proceedings. *See Benson v. O'Brian*, 179 F.3d 1014, 1015-17 (6th Cir.1999).  The plaintiff's complaint is likewise not subject to screening under the corollary statute, 28 U.S.C. § 1915A, because the plaintiff does not seek redress from a governmental entity. "Nonetheless, a complaint may be dismissed sua sponte for lack of jurisdiction where plaintiff's allegations are wholly meritless. *See Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999)." *Mansfield v. Niekamp*, 2000 WL 303017, *1 (6th Cir. (Ohio), 2000).

ALLEGATIONS OF THE COMPLAINT

The plaintiff states that on January 2, 2004, he retained Gettleman to represent him in a federal criminal drug case in the United States District Court for the Southern District of Texas, Houston Division (*United States v. Willie Purdom*, 4:03-CR-00324) ("the trial court").[2]  Plaintiff alleges that he and his family paid the defendant $30,000.00 in legal fees.

Plaintiff alleges that on January 13, 2004, the defendant began representing Charles Lewis Chapple, Jr., a co-defendant of the plaintiff in the criminal proceeding.  Plaintiff alleges that Gettleman's representation of both him (plaintiff) and Chapple constituted a serious conflict of interest.  The plaintiff alleges as follows:

> "Most of the funds paid by the plaintiff to the defendant were paid after Chapple was a known party to the case and after the illegal conflict of interest existed.  The defendant clearly knew the conflict existed no later than January 13, 2004."

[*Id.*, p.4]

> ". . . Defendant continued to collect monies from the plaintiff or his family after knowing of the conflict."

[*Id.*, p.5, p 26].

Plaintiff states that on July 27, 2004, the United States filed a "notice of potential conflict of interest" concerning

---

[2] The Court will hereafter refer to the federal court in Texas as the "the trial court."

3

Gettleman's representation of both the plaintiff and Chapple [*Id.*, p.4]. As a result of the United States' action, another attorney, David Adler, was appointed to represent the plaintiff on September 17, 2004. Plaintiff states that on September 22, 2004, the trial court terminated Gettleman's legal representation of the plaintiff on the grounds of conflict of interest. Plaintiff states that at no time did he waive or consent to the defendant representing him after he learned of the conflict of interest concerning Chapple. [*Id.*].

Plaintiff alleges that during the time in which Gettleman was representing him (between January 2, 2004 and September 17, 2004), Gettleman committed various acts of malpractice in representing him, which included refusing to discuss a possible plea with the government and directing him (plaintiff) to refuse to discuss a plea agreement with the government. [*Id.*].

Plaintiff challenges various components of the legal fees he paid to Gettleman [Complaint, ¶ ¶ 21-24]. Plaintiff alleges that Gettleman charged him $10,000.00 to research whether the Supreme Court decision of *Blakely v. Washington*, 542 U.S. 296 (2004), decided on January 12, 2004, would have any impact on the plaintiff at sentencing. Plaintiff alleges that *Blakely* had no bearing on his federal case [*Id.*, p. 5, ¶ 21]. Plaintiff states that "a fair reading of *Blakely v. Washington* clearly states it does not apply to federal courts or federal sentences and that such matters were

4

not then before the Court." [*Id.*, p.7, ¶ 35].

Plaintiff complains that Gettleman spent 10 hours at $200.00 per hour discussing a plea deal with the government, which discussion he states was unauthorized.[3] Plaintiff complains that Gettleman spent 75 hours at $200.00 per hour doing research to prepare for trial. Plaintiff complains that Gettleman charges $9,450.00 for three (3) trips to Texas, which trips included attending the hearing on the conflict of interest issue. [4]

Plaintiff then alleges that the defendant "unlawfully enriched himself by defrauding the plaintiff of the $30,000.00 for services that he did not nor lawfully could not perform and defendant knew he was committing fraud . . ."[*Id.*, p.7, ¶ 34]. Plaintiff describes Gettleman's billing statements as ". . .the foundation of the conspiracy to defraud to continue operating a scheme and efforts to defraud." [*Id.*, ¶ 36].

Finally the plaintiff alleges that the defendant breached his

---

[3]

The plaintiff states that he did not authorize Gettleman's discussion with the government about a plea bargain [Complaint., p. 5, ¶ 22]. Earlier in the Complaint it appeared, however, that the plaintiff was complaining that Gettleman should have discussed a possible plea bargain with the government on his (plaintiff's) behalf, but that he (Gettleman) failed to do so [*Id.*, pp.4-5, ¶ 19].

[4]

These figures added together amount to $26,450.00. These monies may have been included in the $30,000.00 which the plaintiff states that he paid to Gettleman. The plaintiff did not reconcile the $30,000.00 figure mentioned in ¶ 7 of the Complaint with the amounts listed in ¶ ¶ 21-24.

5

duty of care to ensure that he (plaintiff) received a fair and speedy trial. While the plaintiff does not advise this Court what the ultimate disposition was of the federal criminal charges against him, the Court has accessed the trial court docket sheet by use of the PACER electronic system. The Court takes judicial notice of the information contained in the trial court docket sheet.

On March 8, 2005, the plaintiff entered into a plea agreement with the United States [Trial Court Docket Sheet, Record No. 103]. On December 15, 2005, the plaintiff was convicted of "Conspiracy to Possess with Intent to Distribute 1 Kilogram or More of Heroin, a Schedule I controlled substance." Plaintiff was sentenced to serve a 63-month term of imprisonment, plus five (5) years of supervised release [*Id.*, Record No. 140]. Judgment was entered on December 27, 2005 [*Id.*, Record No. 141].

DISCUSSION
1. Diversity of Citizenship
A. General Rule in Prisoner Civil Actions

The plaintiff alleges that the Court has diversity jurisdiction over his claims against Gettleman under 28 U.S.C. § 1332.[5] The Court will consider whether that statute applies.

---

[5]

28 U.S.C. § 1332 states in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

In support of his claim, the plaintiff alleges that "upon completion of his prison term the plaintiff will be released to a residence in Lexington, Ky., and will make his residence at such location thereby establishing same as his residence and therefore diversity of citizenship is proper in this case." [Complaint, p. 2, ¶ 2].

The party invoking federal jurisdiction bears the burden of proving that diversity of citizenship exists. *Ray v. Bird & Son and Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975). A district court is obliged to consider, sua sponte, whether it has subject matter of jurisdiction, if necessary. *See Apple v. Glenn*, 183 F.3d at 479; *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir.1985); *An African-Descendent v. U.S. Federal Government*, 2007 WL 1341389, *1 (M. D. (Tenn.) (May 2, 2007).

In order to establish jurisdiction in this Court based solely upon diversity of jurisdiction, the plaintiff would have to establish that he is a citizen of Kentucky and that the defendants are citizens of another state, *i.e.*, that they are "diverse" from

---

(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
- - - -

7

each other. Diversity of citizenship requires complete diversity between all plaintiffs on one side and all defendants on the other side. See 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); *see Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Based upon the plaintiff's complaint, the defendant is a citizen of Pennsylvania. Thus, under a diversity analysis, the question is whether the plaintiff is actually a "citizen" of Kentucky.

A person's citizenship for purposes of diversity jurisdiction is his "domicile." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Domicile is determined by physical presence in a state *and* either an intention to reside there indefinitely or the absence of an intention to reside elsewhere. *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir.1973) (emphasis added).

A prisoner does not acquire a new domicile when he or she is incarcerated in a different state; instead, he or she maintains his or her pre-incarceration domicile. *O'Brien v. Schweiker*, 563 F. Supp. 301, 302 (E.D. Pa. 1983). For examples of the factual query and evidence presented in prisoner cases, *see Stifel v. Hopkins*, 477 F.2d at 1124. *See also Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) (where the prisoner made no allegations as to his own citizenship in the pleadings, the prisoner was a citizen of the

8

state where he resided prior to incarceration on the premise that "incarceration in a state does not make one a citizen of that state"); *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir.1991) (determining the prisoner's domicile to be Virginia, the state in which he lived before he was incarcerated); *Gatto v. Macmillan*, No. Civ. A. 96-2910, 1996 WL 526854, at *1 (E. D. Pa. 1996) (prisoner was a citizen of New Jersey, where he resided before being sent to prison, not Pennsylvania, where he was incarcerated); *Tiuman v. Canant*, 1994 WL 471517 (S. D. N. Y. 1994) (an inmate's domicile prior to incarceration remains his domicile for diversity purposes).

Under these standards, the plaintiff, who is merely confined in a federal prison in this district, would not be a "citizen" of Kentucky for purposes of establishing jurisdiction *solely* under the diversity statute, § 1332.

### B. Law Applied to Facts of This Case

Here, the plaintiff broadly alleges that when he is released from federal prison, he will be residing in Lexington, Kentucky. [Complaint, p.2, ¶ 2]. He provides no other factual details in support of that claim.

In *Stifel*, the Sixth Circuit held that a serviceman was not precluded from showing that he had established a domicile different from the one he had prior to entering the military service, "if the circumstances surrounding his acquisition of an off-base residence

9

unmistakably indicate an intention on his part to abandon his former domicile and adopt a new one. . . (cites omitted)." *Stifel*, 477 F.2d at 1122. The Sixth Circuit explained, however, that the serviceman would be required to demonstrate, through other independent means, his intention to establish a new place of residence. The court listed examples of what that showing might entail, explaining as follows:

> "Illustrative indicia of intent [to establish a new residence] include affidavits of intention, transfer requests, registration for driver's licenses, opening bank accounts, addressing tax returns, motive for establishing domicile, and other physical facts evidencing that the desire to remain will not expire when the order requiring presence does."

*Id*. See also *Sullivan v. Freeman*, 944 F.2d at 337.

Thus, *Stifel* establishes that the presumption of non-residence is rebuttable. *Stifel* limited that holding by noting that involuntary presence should operate "as a presumption ordinarily requiring *more than unsubstantiated declarations to rebut*." *Id*., 477 F.2d at 1126 (emphasis added in original)*; See also Tate v. Collins*, 622 F. Supp. 1409, 1412 (W.D. Tenn. 1985).

*Ronald Alexander LeBlanc Trust v. Ransom*, 276 F. Supp.2d 647 (S. D. Tex., Aug 1, 2003), involved facts somewhat similar to Purdom's claims here. In *LeBlanc*, the district court determined that a prisoner had failed to allege more than "unsubstantiated declarations" to rebut the presumption that he retained the citizenship of the state where he resided prior to incarceration.

10

Ronald LeBlanc was a Texas resident and was also incarcerated in Texas. LeBlanc filed a civil action in Texas, in which it was beneficial for him to allege residence in yet another state (Louisiana), so that he could establish diversity jurisdiction in his civil action. LeBlanc alleged that he was a citizen of Louisiana based on his stated plan to reside there after his release from prison. The defendants argued that his claim was a ruse to create the appearance of diversity jurisdiction. The district court in Texas agreed with the defendants, concluding that notwithstanding Leblanc's self-serving assertion that he intended to make Louisiana his home after release from custody, LeBlanc had failed to legitimately establish jurisdiction under diversity of citizenship. The Court analyzed the issue as follows:

> "Although on its face, the rule of law regarding the citizenship of a prisoner for diversity purposes appears to support LeBlanc's claim to be a citizen of Louisiana based solely on his assertion that he intends to relocate to Louisiana, LeBlanc has not cited nor, after an extensive search, has this Court located caselaw favoring the application he seeks. . . .
>
> There is nothing to indicate to this Court that LeBlanc was not a citizen of Texas prior to his incarceration. He resided in Texas at least since his marriage in 1978 and owned property in Texas. He executed the Trust agreement as a citizen of Texas. He is now incarcerated in a federal facility in Texas. His claim to Louisiana citizenship is not based on either current incarceration in Louisiana or immediate prior residency there, but rather solely on his expressed intentions, in conjunction with the prosecution of this lawsuit, to move there after his release. In no instance has a federal court allowed a prisoner to establish citizenship for purposes of diversity based upon such an assertion. **The Court finds LeBlanc's claim to Louisiana citizenship to be**

11

> **unsupported by the cases setting forth the general rule of law. Thus, the Court will not base diversity jurisdiction on Leblanc's unsubstantiated declaration of intent to reside in a state in which he is neither incarcerated nor lived immediately prior to his conviction. Based on this distinguishing factor in LeBlanc's claim to Louisiana citizenship, this Court concludes Plaintiff failed to demonstrate the requisite showing for complete diversity.**

*Ronald Alexander LeBlanc Trust v. Ransom*, 276 F. Supp.2d at 652.

Here, the facts are only marginally different. It is true that Plaintiff Purdom is actually incarcerated in Kentucky, the state where he claims he wants to reside after his release from custody, whereas LeBlanc was not confined in the state where he claimed he wanted to reside after expiration of his prison term. This distinction does nothing to improve Plaintiff Purdom's effort to rebut the presumption that he remains a Pennsylvania resident for purposes of diversity of citizenship in this civil action.

The plaintiff offers only a one line sentence stating his intention to reside in Kentucky after his release from prison. That statement is quite broad and self-serving, since he wishes to sue a Pennsylvania resident under 28 U.S.C. § 1332, the diversity of citizenship statute. Plaintiff Purdom provides no other independent information, such as ties to the state of Kentucky in the form of a business, employment, personal, or family connection which would corroborate or support his self-serving statement that

he wishes to reside here after his release from BOP custody.[6] The plaintiff's claim asserted in January, 2008 - - that he will reside in Kentucky after his projected release date in March, 2009 - - is simply an "unsubstantiated declaration."

Subject matter jurisdiction is necessary for the exercise of federal judicial power. *Richmond v. International Business Machines Corporation*, 919 F. Supp. 107 (E.D. N.Y. 1996) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff has the burden of demonstrating subject matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990).

Under *Stifel*, the plaintiff has failed to rebut the presumption that he is a resident of Pennsylvania, not Kentucky. As the plaintiff has failed to establish diversity of citizenship under 28 U.S.C. § 1332, *sua sponte* dismissal of his complaint, for lack of subject-matter jurisdiction, is warranted. *See Siemientkowski v. Moreland Homes, Inc.* 25 Fed. Appx. 415, 416, 2002 WL 187355, \*\*2 (6th Cir. (Ohio), February 4, 2002) (district court properly dismissed plaintiffs' claims, *sua sponte*, for lack of any jurisdictional basis; diversity of citizenship jurisdiction

---

[6] According to the Bureau of Prison's ("BOP") website, www.bop.gov, the plaintiff's projected release date is March 16, 2009. Presumably that date takes into consideration the application of good time credits.

did not appear to exist because plaintiffs and defendants were citizens of Michigan).

Because the plaintiff and the named defendant are not sufficiently "diverse" from each other, the plaintiff can not establish jurisdiction under 28 U.S.C. § 1332.[7]

## 2. Statute of Limitations Bars Claim

Even were the Court to agree with the plaintiff that there is sufficient diversity of citizenship to satisfy 28 U.S.C. § 1332 (and the Court does not agree), the plaintiff's legal malpractice claim suffers from another fatal flaw.

Kentucky has a one-year statute of limitations for malpractice claims, set forth in K.R.S. § 413.245.[8] Professional malpractice claims must be brought within one year from the date of occurrence, or from the date when the claim either was or should have been

---

[7]

Assuming this Court had diversity jurisdiction in the case, venue would not be proper in the Eastern District of Kentucky. See 28 U.S.C. § 1391(a).

[8]

KRS. 413.245 provides as follows:

"Notwithstanding any other prescribed limitations of actions which might otherwise appear applicable, except those provided in KRS 413.140 , a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal."

discovered by the injured party. [*Id*.]. Here, that one-year time period began to accrue no later than September 22, 2004, the date on which the trial court entered an Order informing the parties that Gettleman's representation of both the plaintiff and Chapple created an irreconcilable conflict of interest. Plaintiff did not file this action until January of 2008, over three years later. Clearly, the plaintiff's legal malpractice claim is time-barred.

The Court noted that in his complaint, the plaintiff has also conveniently characterized the defendant's actions as "fraudulent," perhaps to avail himself of Kentucky's five-year statute of limitations for fraud. *See* KRS 413.120 (12).

Careful review of the plaintiff's allegations reveals that he is actually challenging the adequacy and competency of Gettleman's professional services as a defense attorney. Plaintiff claims that the defendant: (1) did not render adequate legal assistance, such as failing to explore the possibility of a plea agreement early in the case; (2) did not properly interpret whether the *Blakely* case was applicable, and (3) spent too long and charged too much money for performing certain services, such as trial preparation and assessment of the *Blakely* case.

Essentially, the plaintiff challenges whether Gettleman's fees were reasonable in light of the legal services that were either performed or should have been performed. These claims are ones of professional legal malpractice, not fraud. Thus, Kentucky's one-

year statute of limitations would apply, not the five-year statute of limitations for fraud claims.

### 3. Application of 28 U.S.C. § 1331

The Court will briefly discuss 28 U.S.C. § 1331 as a possible alternative basis of jurisdiction over the plaintiff's claims. This statute vests district courts with original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Under this statute, the focus would be on the strength of the connection, if any, of the named defendants to this district.

In order to comport with due process and "traditional notions of fair play and substantial justice," a defendant must have minimum contacts with a forum state in order to be brought before that state's district court. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For a district court to find minimum contacts, "the Defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

To have such an expectation, a defendant must "purposefully avail [ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

16

For claims founded on federal question jurisdiction (such as a claim falling under § 1331), one must look to 28 U.S.C. § 1391(b) which provides that:

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.*

In this action, there is no allegation that Defendant Gettleman fulfills subsection (1), *i.e.*, that he resides in the Eastern District of Kentucky. Nor is there any allegation that the "events or omissions" arose in the Eastern District of Kentucky, or that the named defendant otherwise satisfy either statute's subsection (3). *See Barber v. Simpson*, 94 F.3d 648; 1996 WL 477005 (8th Cir. 1996) (table) (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). Thus, proper venue of this action is simply not in the Eastern District of Kentucky.

Finally, the plaintiff has not alleged that the defendant was acting under color of federal law. In light of that, there could be no construed claim under *Bivens v. Six Unknown Federal Narcotics*

17

*Agents*, 403 U.S. 388 (1971).[9] In summary, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) This action [08-CV-7-JMH] is **DISMISSED WITH PREJUDICE.**

(2) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendant.

This the 12th day of March, 2008.



**Signed By:**
*Joseph M. Hood*
**Senior U.S. District Judge**

---

[9] Under *Bivens*, the plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States. Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of *federal* law. *Bivens*, 403 U.S. at 397.